E. M. COLLINS AND MARY WILSON v. M. C. BOX.

(ON REHEARING.)

1. The acceptance by a son of a deed made to him by the father, which purports to convey title from the father to the son, and the assertion of ownership by the latter under such deed, does not estop the son from asserting title to the same land by inheritance from his mother, unless the deed from the father was made in lieu of the son's interest in his mother's estate.

2. In a suit for the recovery of land under title derived through the father of intervenor (who is defendant), where the intervenor claims by title derived by inheritance from the mother, it is error to exclude evidence showing that the intervenor, after the mother's death, had received by gift or settlement from the father more than his distributive interests in the mother's estate.

3. Permission given by the court to amend pleadings after both parties have announced ready for trial, though an irregularity not warranted by law, furnishes no ground for reversal, when no time is asked by the party objecting to meet a new issue presented by the amendment.

4. The county record of deeds should not be taken by the jury, in their retirement to their room.

5. See opinion for a judgment of the District Court which was rendered in disregard of the statutes of descent and distribution.

APPEAL from Houston. Tried below before the Hon. M. Priest.

The facts will be found stated in the opinion delivered on rehearing.

*D. A. Nunn*, for appellants, in support of his position that the court erred in excluding the evidence offered by appellants, to show that the advancements made by Stilwell Box to the children of himself and his deceased wife, Eunice, were sufficient to compensate them for all claim they had to their mother's estate, cited Burleson v. Burleson, 28 Texas, 418, 419; Walker v. Howard, 34 Texas, 513; Raymond v. Cook, 31 Texas, 375; Moreland v. Atchison *et al.*, 19 Texas, 313; Jones v. Jones, 15 Texas, 143.

He also insisted, that as Stilwell Box inherited a half-interest in the estates of his two children by the first marriage, who died without issue, the verdict and judgment were in disregard of the statutes of descent and distribution.

*Hancock & West*, for appellee.

OGDEN, P. J.—The question of homestead having been conceded by the parties to this suit in the court below,

we are not called upon to notice that portion of the judgment in favor of the widow of Stilwell Box. And the claim of Marion C. Box, under the deed from his father, having been decided by the jury adversely to that claim, and no appeal having been taken on account of that decision, we may take it for granted that the finding of the jury in that respect was correct. And, therefore, we do not deem it necessary to notice specifically all the exceptions taken on the trial, nor the assignments of errors to the ruling of the court in the same.

Under our system of pleadings and practice, a party may set up as many legitimate defenses to an action as he may have and choose to plead; and in an action of trespass to try title there could be no legal objection to a party setting up, in his answer or plea of intervention, title to property by purchase, and at the same time, or by an amendment, claim it by inheritance (Paschal's Digest, Article 1441); and in case either answer or plea is sustained by proof, he is entitled to a judgment to the extent of that answer or plea.

In the case at bar, the intervenor in the first instance claimed the whole land in controversy by purchase from his father, and then claimed, for the heirs of his mother, her community interest by inheritance. These two claims, we think, were admissible; and had he established the validity of his deed, he would have wholly defeated the plaintiff's action; but failing in that, he might have sustained his last plea, and have thereby defeated the action in part only; and as the judgment of the court is in harmony with the hypothesis that the latter plea was legitimate and true, this record presents only one other question which need be noticed in this opinion. Can the surviving husband alienate or encumber the community interest of his deceased wife in real property for debts contracted after her death, so as to defeat the rights of her children as her heirs? or, can such property be

seized and sold under execution for debts contracted by the husband after the death of his wife, so as to extinguish the rights of her heirs? We think these propositions have been settled by statute, Article 4642, Paschal's Digest, and the repeated decisions of this court, referred to in Note 1049, of the same work. On the death of the mother, one-half of the community estate passed to the surviving husband and father, and the title to the remaining half at once descended to and vested absolutely in the children of the deceased mother, subject only to the then existing debts of the community. This doctrine has been so often repeated that we deem it unnecessary to refer to authorities in its support. At the time of the death of Eunice Box, in 1846, the land in controversy was the community property of herself and husband. Her interest then descended to and vested in her children, and was no longer subject to be seized for the subsequent debts of the surviving husband and father. In 1868 this property was sold under execution as the property of Stilwell Box, for a debt contracted subsequent to the death of his wife. This sale could in no manner affect the interest of the heirs of Eunice Box in the land in question, and the purchaser only acquired the interest of Stilwell Box, which was a half-interest only. Nor could Stilwell Box, by a voluntary sale, to pay his individual debt contracted after the death of his wife, have conveyed more than a half-interest in the land. This land, then, on the day of the sheriff's sale in 1868, belonged, one-half to Stilwell Box and the other half to the heirs of Eunice Box, and the purchaser at that sale acquired only an undivided half-interest, which was awarded to him by the judgment of the court in this cause, and we think that was all he had a legal right to demand. Certainly former advancements by the father could in no way have so divested the vested title of the heirs to the land in controversy as to make the whole subject to forced sale for

the individual debts of the father. The court may have erred upon the trial in permitting an amendment in the pleadings after the parties had announced ready for trial. But the record as presented here is so defective that it is somewhat difficult to determine the exact chronological order of the pleadings, or orders of the court, and further it does not appear from the record that the opposite party was surprised or injured by the rulings complained of; and as it appears that substantial justice has been reached by the judgment of the lower court, we are disinclined to disturb the same on account of what appears to be immaterial errors, when so imperfectly set out in the record; the judgment is therefore affirmed.

AFFIRMED.

Opinion delivered September 15, 1873.

ON REHEARING.

*Jackson & Nunn*, for appellants.

*Hancock, West & North*, for appellee.

DEVINE, ASSOCIATE JUSTICE.— Thomas P. Collins, a purchaser under a judgment against Stilwell Box, brought suit in the District Court of Houston county, at the Fall term, 1868, in an action for the recovery of seven hundred and twenty-five acres of land, less two hundred acres admitted to be the homestead of defendant, Stilwell Box,— said tract being part of "the Stilwell Box league," in Houston county. Petitioner prayed for the appointment of commissioners to set off the two hundred acres (the homestead exemption), and for general relief, etc. There was service by the sheriff on Stilwell Box. At the same term the appellee, Marion C. Box, obtained leave to intervene and set up claim to the land by deed of conveyance for a valuable consideration from his father, Stilwell Box, and he aver-

red that plaintiffs' claim is a cloud upon his title, and prayed judgment in his favor, etc.

At the Fall term, 1871, the appellants, as the surviving wife and daughter, suggest the death of plaintiff, pray to be permitted to prosecute the suit and amend the petition, and aver that the deed under which intervenor, Marion C. Box, claims the land in controversy was the result of a fraudulent combination between intervenor and his father, the defendant; that defendant was largely indebted at the time of making the pretended deed; that no consideration passed from intervenor to defendant; that the same was made to hinder, delay, and defraud creditors; that the deed is a cloud upon their title, and they pray for the cancellation of the same.

The intervenor, Marion C. Box, amended his pleadings, and, with other matters, alleged that the land in suit was a portion of the community property of his father, Stilwell, and his mother, Eunice, Box; that his mother's estate had never been administered, or any action had relative to her estate; claimed pay for valuable improvements, and denied all fraud or collusion between himself and father.

To this the appellants replied by an amended petition, alleging that the intervenor is but one of several heirs of Eunice, the first wife of Stilwell Box; that the children of said marriage have long since received more than a fair portion of the community estate, and that the intervenor has received since his mother's death property worth more in value than any possible interest he could have in her estate.

There were several exceptions by plaintiff which it is not necessary to notice. A verdict and judgment in favor of the intervenor were rendered for half the land claimed; a motion by plaintiff for a new trial, which was overruled, and an appeal to this court.

In response to the special issues presented to the jury

by the charge of the court, the verdict was as follows:
" We, the jury, find, first, that the land in question is
community property, and that the heirs of Eunice Box
have never been satisfied. We believe that the convey-
ance of the lands by Stilwell Box to his son Marion was
made with intent to defraud, hinder and delay creditors.
We believe that plaintiff is entitled to half of the land
in controversy, and find accordingly."

The verdict ascertains and states the fact that the inter-
venor was entitled to one-half of the land as the heir of
his deceased mother's community interest in that tract;
and it settles the fraudulent character of the conveyance
from Stilwell to Marion C. Box.

It remains to be seen, however, whether the verdict and
judgment are supported by the pleadings, the law, and
the evidence in the case.

The first assignment of error, that the court erred in
overruling appellants' exception to amendment of inter-
venor, and in refusing special charge asked by plaintiff,
unless coupled with a qualification, is not supported by
the record. The intervenor could claim, or seek to defend,
under a claim of inheritance from his deceased mother,
and his former claim under a deed from his father did
not estop him from asserting title to the same land by in-
heritance from his mother. Consequently, there was no
error in giving the special instruction or charge, that de-
fendant was estopped from claiming as the heir of his
mother, because he had formerly accepted and claimed
under a deed from his father, Stilwell Box, with the
qualification, " that if intervenor accepted the land in con-
troversy in lieu of his interest in his mother's estate, and
the same is void for fraud, and he was not a party to the
fraud, it amounts to no satisfaction," etc.

Of the other assignments of error, it is only necessary
to notice the following, which are set forth in the motion
for a new trial, or in the bills of exceptions: That " the

court erred in excluding evidence of the conveyance of real estate by Stilwell Box, in 1859, to his several children." The plaintiffs in their amended pleadings had averred that the intervenor, Marion C. Box, and all the heirs of Eunice Box (their deceased mother), had received after her death by gift or settlement from their father (the defendant) more than their distributive share in their mother's estate. There was error in the refusal of the judge to permit this evidence to go to the jury.

The assignment of error, that "the court erred in permitting the intervenor to amend his pleadings after both parties had announced ready for trial," worked no damage to appellants. It was certainly an irregularity not warranted by law, but it evidently did not operate to the prejudice of appellants' rights; if it operated as a surprise, and was complained of on that ground, the court undoubtedly would have given the plaintiffs time to meet the new issue presented by the amendment, or have granted a continuance to the next term. Neither were asked for by plaintiffs, and ample time seems to have intervened between the announcement of ready for trial, on the fourth of December, the filing of exceptions and amendments by plaintiffs, and the trial, which did not commence until the fifth.

The tenth assignment, that "the court erred in refusing to allow the jury to carry the evidence read to them to their room in retirement," is vague and so indefinite as to leave it uncertain what evidence is meant. The meaning of the assignment is, however, ascertained by an examination of the bill of exceptions, on page 35 of transcript, from which it appears that the evidence which the jury were not permitted to carry to their room in retirement was "the records containing the deeds read in evidence— the records having been read in lieu of the originals." In this there was no error of the court. The public records of the county should not be permitted to pass out of the

supervision and control of the district clerk or his deputies; no reason existed, or is attempted to be shown, why they should be carried; at the request of counsel, by the jury to their room, and, in our opinion, it is more than doubtful whether the court, if so inclined, had the legal right, in a proceeding of this kind, to remove the record books of the county beyond the control of the clerk or his deputies. The clerk, and not the judge, has the legal custody of the records.

The error assigned, that "the court erred in charge to jury," is sustained by an examination of the charge of the judge, wherein he states, "a settlement on such heirs (speaking of children), by either partner, in lieu of their interest in the community, and the same is accepted by them, when of age, in full ratification of such interest, and the same is shown by proof, such settlement will be enforced and respected between the parties." In a subsequent part of the charge reference is made to the paragraph just quoted as the standard to ascertain whether the intervenor, as heir of Eunice Box, had been satisfied or compensated for his interest in her community estate.

The judgment of the District Court, by reason of the errors in excluding evidence of advancements by the father, Stilwell Box, to his son, the intervenor, and the charge of the court, will be reversed. As the cause will go back for a new trial, we deem it proper to call attention to the irregular and confused character of the proceedings from the commencement of the suit to the close of the final judgment. Collins sues Stilwell Box, who is regularly served with citation, etc. He files no answer, but at the same term the intervenor asks leave to intervene, and claims the land in suit by virtue of a deed from his father. From the date of service on Stilwell Box by the sheriff, he glides out of the case, without the slightest notice. He files no answer; he is not dismissed from the

cause; there is no suggestion on the record of his death, no motion or suggestion to make his heirs or legal representatives parties, and his name is only mentioned incidentally in the pleadings or judgment of the court. The court, in its fourth special issue, charged the jury with reference to the heirs of Eunice Box having any interest in the land; and the jury find in favor of the intervenor, Marion C. Box, upon which the court directs commissioners to divide the land in controversy into two equal portions, allotting one-half to the plaintiffs, and dividing the remaining half into three equal portions—one-third to E. J. Goodman, another portion to Samantha Goodman, and the remaining third to the intervenor, Marion C. Box—the persons first named not being known or in any way connected with the suits.

On the trial it was shown by the intervenor, on his cross-examination, that there were five children living after the death of their mother, Eunice Box, in 1846; that of these, two died intestate; that intervenor had received from his father, and after his mother's death, five hundred and forty acres of land and some stock; that each of his two sisters received about the same.

Even admitting that the intervenor was entitled to recover, the party claiming through his father would be entitled to more than one-half of the existing community property, as, by "the law of descent and distribution," the father inherited, as the surviving parent, at least one-half of the two children's estate, who died intestate after their mother, which would, added to his community right, have given him more than one-half. The court, however, ignored this fact, and allotted the plaintiffs, who were the owners of his interest, but one-half of the tract. There was nothing in the finding of the jury or the facts in the case to support the judgment adjudging only one-half of the tract to plaintiffs.

For the errors indicated in this opinion, the judgment of the District Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.