## S. W. Turner v. Jas. E. Ferguson.

(Case No. 3347.)

1. Estoppel.— An estoppel cannot result from the promises or acts of one who makes or does them without consideration, in ignorance of his rights, where there has been no negligence in failing to ascertain his rights.
2. Pre-emption — Occupant in good faith — Statute construed.— A mere temporary occupancy does not constitute one such an occupant in good faith, or actual settler, as is contemplated by the act of August 12, 1870 (Pasch. Dig., vol. 2, art. 7048).

Appeal from Bell. Tried below before the Hon. E. B. Turner.

Suit brought September, 1872, by J. E. Ferguson and his co-plaintiffs, heirs of McGowan, for one hundred and ninety-eight

acres of land, patented to the heirs on the 15th day of December, 1871, against J. T. and Mary J. Dulany and S. W. Turner, alleging trespass and ejectment of plaintiffs by Turner, abetted by his co-defendants. On September 6, 1875, plaintiffs, by amendment, alleged that a certain part of the land being vacant public domain, one Dunn had the same surveyed, entered on and improved it, and did the preliminary acts to pre-empt it, and afterwards transferred the same to Isaacs, who succeeded to the possession; that afterwards, in 1870, Turner entered under a contract with Isaacs to hold for him until October 1, 1870; that afterwards, J. E. Ferguson (Turner having consented to hold for him, if he did purchase) bought of Isaacs; that he paid Isaacs, and located the McGowan certificate on the land, and paid charges on the same, on the faith of the promises of Turner to hold for and surrender to him; that Turner, instigated by the Dulanys, refused to surrender the premises, but after said location undertook to pre-empt the land; and that Turner, by his conduct, was estopped. By an amendment plaintiffs set up more elaborately the acts and representations of Turner, and the reliance thereon by Ferguson, acting also for his co-plaintiffs, in which also a conspiracy with the Dulanys was alleged, by which Turner, it was claimed, was estopped.

Turner answered that he took possession of one hundred and sixty acres of the land February, 1870, and, learning it was vacant, made application to pre-empt it December 10, 1870; had it surveyed in March, 1871, and filed field notes in land office September 21st, and the commissioner refused to patent, and asked cancellation of plaintiffs' patent. Dulany and wife filed general denial and disclaimer.

Trial September 11, 1875, and verdict and judgment for plaintiffs for the land. From this judgment defendant S. W. Turner appealed.

*A. D. McGennis,* for appellant.

*L. C. Alexander* and *W. T. Rucker,* for appellee.

I. The appellant assigns as error the failure of the court to sustain exceptions to plaintiffs' amended petition. When the record shows no action by the court upon special exceptions, they are presumed to have been waived.

II. The court correctly charged that if J. E. Ferguson, by the representations of Turner, was misled and induced to pay out money to procure the land, that Turner was estopped from setting up a pre-emption claim to the same. Love *v.* Barber, 17 Tex., 317,

318; Ins. Co. *v.* Lyons, 38 Tex., 614; Johnson *v.* Byler, 38 Tex., 612;
Burleson *v.* Burleson, 28 Tex., 383; Johnson *v.* Hamilton, 36 Tex.,
271; Williams *v.* Chandler, 25 Tex., 11; Wood *v.* Seeley, 32 N. Y.,
105; Gregg *v.* Wills, 10 Ad. & E., 90; Bigelow on Estop., p. 434, 2d
ed., and authorities cited.

GOULD, CHIEF JUSTICE.— Ferguson and others, being the heirs of
John McGowan, claim the land for which they sue by virtue of a
patent to them dated December 15, 1871, the location having been
made October 14, 1870.   Turner, the defendant, claims that he was
an actual occupant in good faith, or settler on the land in contro-
versy, being vacant public domain, at the time of plaintiffs' file,
and that, under the act of August 12, 1870, he, on December 10,
1870, filed the proper affidavit and designation of the land claimed
by virtue of his settlement, and in due time had the same surveyed
and the field notes returned to the general land office.   It appears
that one Dunn originally claimed the land as a pre-emptionist; that
Isaacs claimed it in some way under Dunn, and that Turner, an im-
migrant, went on to the land in February, 1870, under a written
contract with Isaacs to hold the land as his tenant until October 1,
1870, and then to deliver up the same.   On a former trial the
plaintiffs recovered, but on appeal to this court the judgment was
reversed, primarily on the ground that the court erred in allowing
plaintiffs to offer evidence of a title not set up in their pleadings,
but also on the ground that the Dunn pre-emption having been
abandoned, and the land being vacant when Turner went upon it,
he was under no obligation to hold it for Isaacs, or for Ferguson,
who had bought out Isaacs' claim, and that Turner having proved
up his pre-emption, his rights could not be defeated "by a subsequent
location."   See Turner *v.* Ferguson, 39 Tex., 508.   The court must
have intended a location subsequent to Turner's settlement, for in
fact the location was prior to his affidavit.   When the case was re-
manded the plaintiffs amended their pleadings, charging that
Turner had promised to hold the land for him, and that on
the faith of that promise he paid Isaacs for his claim, located
the land, and incurred expense in having it surveyed, and claiming
that by reason of these facts Turner was estopped from disputing
plaintiffs' title.   On the trial the court charged the jury that, "if
Ferguson had purchased the Dunn-Isaacs title out of the way before
he went to Turner, and, after apprising Turner that he had pur-
chased the Dunn-Isaacs claim, Turner promised to turn over to Fer-
guson and set up no claim save to attorn to Isaacs, and if after that

Ferguson filed his certificate on the land and paid out his money to procure surveys, acting on the strength of what Turner had said about his readiness to turn over to him, then Turner is estopped from disputing Ferguson's title."

There was a verdict and judgment for plaintiffs, an appeal by Turner, and one of the errors assigned is " the charge given to the jury on the question of estoppel *in pais.*" It is to be observed of the charge complained of, that it wholly ignores the question whether Turner, at the time he made the promise, knew the fact that the Dunn pre-emption had been abandoned and that the land was vacant. Turner testifies that when J. E. Ferguson came to him about the land, and told him that he had purchased of Isaacs, that he " did not know the exact condition of the land; supposed Isaacs owned it." If this were so, and Turner's evidence is not contradicted, it would seem highly improbable that he knew that Ferguson applied to him because he intended to locate the land; for had he known of that intention, he would have been led to know that Ferguson at least supposed that Isaacs did not own the land, but that it was vacant. Ferguson does not testify that he informed Turner that the Dunn pre-emption was abandoned, but did tell him that he had bought Isaacs out, and asked him if he would turn over the place to him as he had agreed to do to Isaacs, which he said he would do. Nor does Ferguson testify that anything was said about his intending to locate the land, nor, indeed, though he says that after this promise of Turner's, he paid Isaacs, made his location, and had the land surveyed, does he testify that he did this on the faith of Isaacs' promise. Under the evidence in the case, it was, to say the least of it, questionable whether Turner knew the facts about the Dunn pre-emption at the time of his promise. Unless he did know the facts in regard to the abandonment of that claim, his promise, made without consideration, and in ignorance of his rights, did not estop him. Without knowledge of the facts on his part, or at least without gross negligence in remaining ignorant of those facts, his promise to yield up the place to Ferguson would not estop him from subsequently asserting whatever rights he might have. Bigelow on Estoppel, 3d ed., pp. 519, 520; Scoby *v.* Sweatt, 28 Tex., 730; Mayer *v.* Ramsey, 46 Tex., 375. In the absence both of knowledge of the facts and of negligence in failing to know them, there would be no proof of wrong, no fraud actual or constructive, and that essential element of estoppel would be wanting. Scoby *v.* Sweatt, *supra.* We conclude, then, that the charge of the court on the subject of estoppel was erroneous. It was not merely defect-

ive, wanting in fullness, but it was positively erroneous in stating that the defendant would be estopped by facts which did not of themselves constitute an estoppel. This error, under the evidence in the case, was one which may have misled the jury. Attention was called to it in the motion for a new trial, and we think it entitles appellant to a reversal of the judgment.

In reversing the case, it is deemed proper to suggest the inquiry whether Turner was such an occupant in good faith, such an actual settler, as to come within the meaning of the act of August 12, 1870 (Pasch. Dig., vol. 2, art. 7048). Was his occupancy "accompanied with such circumstances as show an intention of remaining" (Cravens v. Brooke, 17 Tex., 373), or was it a mere "temporary occupation?" Burleson v. Durham, 46 Tex., 160. In the cases which established the rule that one who had settled and improved public land, whether he supposed it to be vacant, or intended to claim it as a pre-emption, or not, should be entitled to the privileges of a pre-emptioner, it was clear that the party had resided on the land with the intention of making it his home. Cravens v. Brooke, supra; Jennings v. De Cordova, 20 Tex., 515; Spier v. Laman, 27 Tex., 205; Wheeler v. Styles, 28 Tex., 240. In Pain v. Miller, 35 Tex., 79, although Pain occupied the land as a tenant, the inference from the meager statement given is, that it was such a tenancy as constituted a residence certainly more permanent than that of Turner during the few months he held the land for Isaacs. At what particular date his occupancy first was accompanied with the intention of making it his home, whether before or after the file of plaintiffs, does not appear. The suggestion in regard to the character of his occupancy is made because it seems to us a question necessarily arising out of the facts of the case, and because of our opinion that a mere temporary occupancy does not constitute a party an occupant in good faith, in the meaning of the statute.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered November 10, 1882.]