## ALICE BRINKLEY ET AL. V. GEORGE SMITH.

### No. 1026.

**1. Public Land—Homestead Donation—Actual Residence Necessary.**

An application for public land under the homestead donation laws has no validity where the applicant is not actually and personally residing on the land at the date of the application; a former settlement on the land with an intention to return to it being insufficient, as also a possession of the land by tenant.

**2. Same—Estoppel—Contract Ineffectual.**

One who is living on vacant public domain is not estopped from acquiring it from the State under the homestead donation laws, by accepting the obligation of another person to convey a part of the land to him, when the other shall have acquired patent or legal right thereto—such other person not then residing on the land and his application therefor being invalid on that account.

APPEAL from Polk. Tried below before Hon. L. B. HIGHTOWER.

*James E. Hill* and *Oscar E. Oates,* for appellant.—1. The trial court erred in giving the jury special instruction requested by plaintiff, as follows: If at the time the defendant Alice Haynes made her application for the land involved in this suit, Holder Dunnam was occupying and holding the land for her, this would not constitute her an actual settler in good faith. And if you so believe you will find for the plaintiff. Bledsoe v. Cain, 10 Texas, 456-459; Jennings v. DeCordova, 20 Texas, 514; Thornton v. Murray, 50 Texas, 167-169; Johnson v. Eldridge, 49 Texas, 523, 524; Cravens v. Brooke, 17 Texas, 274.

2. The use of the word "actual" by the court in its charge should not have been abstract. The court should have defined the word "actual" to mean possession on the ground, in fact, as contradistinguished from constructive possession which the legal title draws after it. That actual possession is the opposite of virtual and constructive; one is visible on the land itself, the other can not be seen on the land. Bled-

soe v. Cain, 10 Texas, 456, 459, 460; Cravens v. Brooke, 17 Texas, 274; Jennings v. DeCordova, 20 Texas, 514; Speer v. Lamon, 27 Texas, 215; Wheeler v. Styles, 28 Texas, 240; Burlerson v. Durham, 46 Texas, 160; Turner v. Ferguson, 58 Texas, 10.

*Holshausen & Feagan*, for appellees.—1.  A holding of public land by a tenant will not constitute an actual settler in good faith, as is required by the homestead laws of this State.  R. S., arts. 3939, 3944, 3945; Swetman v. Sanders, 85 Texas, 29ð; Busk v. Lowrie, 86 Texas, 128; Gambrell v. Steel, 55 Texas, 586; Pain v. Miller, 35 Texas, 80; Baker v. Millman, 77 Texas, 47.

2.  Neither the appellant Alice Brinkley nor Mrs. Fannie Garner had, in March, 1890, any right in the land in controversy that could be made the subject of a contract by them or estop appellee in his right to protect himself and acquire a homestead upon the land.  Burleson v. Durham, 46 Texas, 60.

WILLIAMS, ASSOCIATE JUSTICE.—Appellee brought this suit to recover one hundred and twenty-six acres of land for which he had procured a patent from the State, as a homestead donation.  Appellant claimed under an application for a survey of it as a homestead donation, which was prior in date to that of appellee.  The ground on which her claim was held in the court below to be inferior to that of appellee was that she was not, at the time she made her application and affidavit for a survey, and at the time appellee made his application, an actual settler on the land.

The facts in regard to appellant's claim are as follows:  In 1851 or 1852, Harvey Haynes settled upon and improved a place or tract of land upon which was located a certificate for a labor issued to William Frisby.  There is no claim that this Frisby location was or is invalid, and the land covered by it was bought and owned by Harvey Haynes.  On the 31st day of March, 1857, Harvey Haynes made application to the county surveyor for a pre-emption of two hundred acres, and caused a survey to be made which included the part of the Frisby tract upon which his improvements were situated, and also included the land in controversy, a vacant strip adjoining the Frisby.  The tract thus surveyed was ever afterwards known as the Harvey Haynes pre-emption, and the taxes upon it were paid as required by law.  Harvey Haynes died in 1857, but his widow, Nancy Haynes, continued to live at the same place until a short while before her death in 1877.  There is evidence that she had temporarily left it for a while before her death, but we deem this unimportant.  Neither she nor her husband ever settled or lived on the land in controversy, their homestead improvements being located entirely on the Frisby tract.  There is evidence, however, that before his death, Harvey Haynes put lumber on the land in controversy, preparatory to building a house, and that after his death, Mrs. Haynes continued the improvement and built a house which stood many years.

This we deem it unnecessary to state more fully.  At her death, Mrs. Haynes bequeathed the Harvey Haynes homestead to her two children, Mrs. Garner and James Haynes, then the husband of appellant.  Mrs. Garner has occupied the place on the Frisby tract.  In 1888, James Haynes with his family moved upon and improved a place on the land in controversy, where the former improvement had stood, and remained upon and cultivated it until his death, which occurred in March, 1889. Appellant (who subsequently married Brinkley) remained upon the place two or three weeks after her husband's death, and then, on account of the tender ages of her two children, went to Mrs. Garner's, at the old homestead.  She remained there a short while, and then went to her sister's, who also lived near the land in controversy, where she remained until December, 1890, when she returned to the land in controversy and has since lived there.  After she left the place in 1889, her brothers occupied and managed it for her for that year, and, during the year 1890, she had a tenant upon it who recognized her right to it and paid her rent.  At some time prior to the filing of the applications of the parties to this suit for surveys of the land, the appellee Smith had entered upon a part of the land in controversy under a contract with Mr. Garner for the purchase of ten acres, had built a house and opened a small farm, and has since resided there.  Appellant, in the spring of 1890, learned that Smith was contemplating making a claim to the land as vacant, and she was advised to make application for a homestead donation of it, in order that she might so hold it in case the land should be held to be unappropriated.  On the 3d of March, 1890, she filed her application and affidavit as required by law for a survey on the land with the deputy county surveyor of Polk County.  Smith was present when this was done, and, at the same time, appellant and her sister-in-law, Mrs. Garner, whose husband had died, executed to Smith the following obligation:

"The State of Texas,
    County of Polk.
    We obligate and bind ourselves, heirs, etc., to make to George Smith a deed to ten acres of land sold him by W. H. Garner, on which he, Smith, now lives, as soon as the pre-emption file of Alice Haynes is recognized in the General Land Office, or so soon as the patent issues, as said Smith may desire.
    Witness our hands this the 4th day of March, 1890.

                                             her
                                  .    Alice X Haynes.
                                            mark
                                       Fannie Garner."
Attest:   James E. Hill."

Smith accepted the obligation and expressed himself as satisfied with it.  On the 5th of March, 1890, Smith made application and affidavit

as required by law with the county surveyor for a survey of the land as a homestead donation. The land was surveyed for Smith on the 24th day of April, 1890, and his field notes were filed in the Land Office on the 2d day of May, 1890, and a patent issued to him on the 31st day of October, 1894, proof of three years' occupancy having been duly made April 5th, 1893. A survey was made for appellant on the 5th day of February, 1891, the field notes of which were filed in the Land Office on the 12th day of February, 1891.

The assignments of error are all taken to the rulings of the court below, affecting the right of appellant to the land under her claim made for a donation of it as vacant land. No question is raised as to any right under the attempted pre-emption of it made by Harvey Haynes, and, as neither he nor his widow ever occupied the land which was vacant, we do not see that any right was acquired by his proceeding of which appellant can now avail herself. The decision of the case depends upon the question whether or not appellant, when she made her application, was entitled to acquire the land under the laws regulating the donation of public lands as homesteads for actual settlers. After a careful consideration of the decisions which have been made by our Supreme Court, construing the statutes upon the subject, we have reluctantly reached the conclusion that she was not. The benefits of these laws are extended to actual settlers, and this means persons who have not only made an actual settlement upon the land, but who, at the time of making application, are actually living on the land. The fact that a person has once settled upon the land is not sufficient. He must be living upon it when he makes his application in order to comply with the law conferring the right. If he makes the settlement, and while on the land complies with the law prescribing the manner in which he must proceed, and thereby fixes his right, a mere temporary absence from it does not forfeit the claim. But by merely settling on the land, he acquires no right except the right to make his application thirty days thereafter, while still remaining on the land. When he leaves, without having complied with the law by making his claim within thirty days after his settlement, his occupancy and improvement go for nothing. The intention to return cannot keep alive any right, because he has acquired none. The land remains unappropriated and open to occupation by anyone else. It is only by complying with the law that the claimant can fix any right in the land, and he only complies with the law by filing his claim while actually living on the land. Swetman v. Sanders, 85 Texas, 299; Busk v. Lowrie, 86 Texas, 128; Baker v. Millman, 77 Texas, 46.

These authorities, it seems to us, incontestibly establish the proposition that a person not actually living on public land at the time he makes his application for a survey, cannot fix a right to a donation of it for a homestead, and none of the decisions cited by appellant's counsel hold to the contrary. Can it be said that appellant, at the time her application was made, was actually settled upon the land as her home? It is admitted that she had formerly done so, and it may be conceded that

she intended in future to do so again. But it must be remembered that she had done nothing to entitle her to re-occupy it to the exclusion of any other person. It was still vacant and unappropriated. Her former occupancy did not mature into a right; and her intention to return could not supply the place of acts which the law required to create the right. The fact that others were holding the land for her was not equivalent to actual settlement by her. The relation of landlord and tenant could not exist between them. She had no right in the land which could be held by them for her. The land belonged to the State, and their possession of it was not her possession. Indeed, those very persons, had they formed the purpose of making their permanent home upon the land, could have secured it, notwithstanding the fact that they had entered supposing she was entitled to it. Wheeler v. Styles, 28 Texas, 240; Swetman v. Saunders, 85 Texas, 299; Dailey v. Rogers, 46 Texas, 578; Payne v. Miller, 35 Texas, 80.

These authorities also show that appellee, by his acceptance of the obligation of Mrs. Garner and appellant to convey a part of the land, was not estopped from acquiring it as a homestead. It was public land, open to the occupancy of all. He who first complied with the law secured the best right. Appellee had his permanent home upon it, and when he took the steps provided by law, his right was fixed. The case is not like those cited by appellant, in which parties make a contract, upon a sufficient consideration, for the joint acquisition from the State of land, in which the contract is enforced after one of them has acquired the land in accordance with it. The charges of the court complained of enforced these views, and those, of the refusal of which appellant complains, conflict with them. It is unnecessary to discuss them in detail, as what has been said virtually disposes of them all.

Affirmed.

*Affirmed.*

Delivered March 5, 1896.

Writ of error refused.