### FRANK KELLEY v. THE STATE.

#### No. 4251.    Decided November 1, 1916.

**1.—Robbery—Plea of Guilty—Practice in District Court.**

Where, upon trial of robbery with firearms, the court, under article 566, Code Criminal Procedure, instructed the jury that notwithstanding defendant pleaded guilty, the State had to prove his guilt beyond a reasonable doubt, it was proper for the State to introduce all the testimony it had to show defendant's guilt.

**2.—Same—Evidence—Flight—Resisting Arrest—Details—Other Offense.**

Upon trial of robbery with firearms, where the defendant pleaded guilty, the State in introducing its testimony as required under the statute, had the right to prove the flight or attempted flight of the defendant, and the fact that he resisted arrest, and there was no error to permit the officers who made the arrest a few hours only after the commission of the offense to testify that defendant attempted to flee, as well as that he resisted arrest when they arrested him for the offense charged, and if there was any inadmissible testimony as to details, it was the duty of the defendant to point it out in a bill of exceptions. Davidson, Judge, dissenting.

**3.—Same—Rule Stated—Objectionable Testimony—Bill of Exceptions.**

The law is well settled that where evidence is introduced over objection and some of it is admissible and some is not, but all is objected to, no error is shown, as the objectionable part must be specifically pointed out in a bill of exceptions. Following Martin v. State, recently decided.

**4.—Same—Charge of Court—Manner of Arrest—Conduct of Officers.**

Where, upon trial of robbery by firearms, the defendant pleaded guilty, and the evidence showed for the State that the defendant secreted himself immediately after committing the crime, and was aware that officers were in pursuit of him to effect his arrest, and had neither opportunity to make themselves known to the defendant before arresting him, nor time to procure a warrant,

and that the defendant shot at said officers when they entered his room and tried to escape, and that the officers made the arrest·in a proper and legal manner, there was no error in the court's refusal of defendant's requested charges that defendant had the right to resist arrest, if made in an unlawful manner, the court otherwise properly charging the jury. Davidson, Judge, dissenting.

Appeal from the Crimina₁ District Court of Dallas. Tried below before the Hon. W. L. Crawford, Jr.

Appeal from a conviction of robbery by firearms; penalty, ninety-nine years imprisonment in the penitentiary.

The opinion states the case.

*W. F. Bane* and *El J. Gibson,* for appellant.—On question of other transactions: Spriggins v. State, 42 Texas Crim. Rep., 341, 60 S. W. Rep., 54; Wilkerson v. State, 60 Texas Crim. Rep., 388; Miller v. State, 79 Texas Crim. Rep., 9.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of other transactions: Kelley v. State, 79 Texas Crim. Rep., 362, 185 S. W. Rep., 570.

On question of arrests: Lynch v. State, 41 Texas Crim. Rep., 510; Smith v. State, 48 id., 233; Stewart v. State, 76 Texas Crim. Rep., 442.

PRENDERGAST, Presiding Judge.—This is an appeal from a conviction of robbery with firearms, and· appellant's punishment assessed at ninety-nine years in the penitentiary.

This is the second appeal, the first being reported in 79 Texas Crim. Rep., 362, 185 S. W. Rep., 570. The opinion there sufficiently discloses the character of case. No question arises on this appeal on which the judgment was then reversed.

Appellant on this, as on the former trial, pleaded guilty, after being properly and fully admonished by the court of the consequences, and strictly in conformity with the statute. (Art. 565, C. C. P.) He did not testify.

In charging the jury the court gave that which was specially requested by appellant, which, after stating the character of the charge against him by the indictment and the fact that he had pleaded guilty after being duly admonished, etc., as required by the statute, in a separate paragraph told them: "Notwithstanding said plea of guilty has been entered by defendant, yet before you can convict the defendant, you must believe from the evidence beyond a reasonable doubt that the defendant is guilty of the offense charged. . . ." Then follows a definition of the offense as prescribed by statute, and requires the jury to believe from the evidence beyond a reasonable doubt that he was guilty before they could convict him. Under this charge notwithstanding he pleaded guilty, the State had to prove his guilt beyond a reasonable doubt, and it was proper that the State should then introduce all the testimony it had to without doubt show his guilt. It could not be held that the State was thereupon merely to introduce only a part

of its evidence to show his guilt. It had the right to introduce all of it. The statute (art. 566, C. C. P.) expressly requires that when an accused pleads guilty, if the punishment is not absolutely fixed by law and beyond the discretion of the jury to graduate the punishment in any manner, a jury shall be empaneled to assess the punishment "and evidence submitted to enable them to decide thereupon."

It has uniformly and in a great many cases been held by this court, and it is the law, that the State may prove the flight, or attempted flight, of the defendant and the attendant circumstances as a fact to help show the guilt of the defendant. Sec. 135, 1 Branch's Ann. P. C., p. 78, and the cases there collated.

It is equally well settled that where a party is arrested, or sought to be arrested, for an offense, and he resists arrest, it is a legitimate fact to be proved. Mitchell v. State, 52 Texas Crim. Rep., 37; Moreno v. State, 71 Texas Crim. Rep., 460; 2 Jones on Ev., sec. 287.

There are quite a number of bills of exceptions herein. It is unnecessary to discuss each separately. A number of them present the same question, or such a kindred question, as that the questions can be determined without separately discussing each bill.

The State introduced several police officers, who participated in arresting appellant a few hours only after the commission of the offense, and each testified to such a state of facts as to unquestionably show that appellant both attempted to flee and also that he resisted arrest when they undertook to arrest and did° arrest him for the offense charged. Each of appellant's first several bills quotes in full both on direct and ˏcross-examination the testimony of each of these witnesses on the points stated and states that he objected to the whole of the testimony of each on the ground that it was immaterial, irrelevant, proved another and different offense committed by appellant at another and different time and place, was no part of the res gestae of the offense herein, but that if it was admissible for any purpose, it was not competent or proper for the State to prove the details and minute circumstances surrounding and accompanying the same. The court in qualifying each of these bills stated that the testimony of said respective officers was admitted for the purpose of showing flight and attempted flight and resistance of an arrest and the circumstances surrounding his arrest on the charge herein. On the previous appeal we correctly and specially held that this testimony was admissible. The bills in no way point out, or attempt to point out, what the details and minute circumstances were which he claimed were inadmissible. Unquestionably, the testimony of each of these officers not only tended to show, but did actually show, that appellant, as stated, attempted flight and resisted arrest when these officers sought to arrest him for the heinous crime so recently committed by him, and for that reason their testimony was clearly admissible. If there were any details and minute circumstances in their testimony which were inadmissible, it was the duty of the appellant at the time to specifically object to that

part and point it out in his bill, which he did not do. The law is well settled that where evidence is introduced over objection and some of it is admissible and some of it is not, but all is objected to, no error is shown. It is necessary that the objectionable part must be specially pointed out and objected to instead of objecting to the whole. Sec. 211, 1 Branch's Ann. P. C., p. 135; Boone Martin, 188 S. W. Rep., 1000, recently decided, wherein we collated and cited the authorities on this point. So that none of appellant's bills on this subject show any error.

Appellant has other bills to the refusal of the judge to give special charges requested by him. These we consider together. In one, he wanted the judge to instruct the jury that unless they believed beyond a reasonable doubt that the officers arresting him made known to him the authority under which they were acting, their identity and the reason for his arrest, it was not unlawful for him to resist such arrest; and if they had a reasonable doubt concerning the officers, or either of them, making known to him their authority and the reason for his arrest, then the resistance on his part was legal.

In another, he wanted the court to charge the jury that the law requires that in making arrests the officer shall always make known to the accused person, if he has time or opportunity, under what authority the arrest is made and the reason for his arrest.

The judge, in qualifying these bills, stated: "The testimony shows that at the time the officers knocked on the door of Kelly's room at the Williams Hotel that Kelly opened the door, looked out, and almost immediately began to shoot; that police officer Eimicke was shot before he entered said room, and that Kelly continuously from the time he opened said door shot at police officer Frank Smith until said officer left said room.

"The testimony further shows that after the witness Smith had left Kelly's room that Kelly slammed the door, went to the window and looked out on the sidewalk, that police officer Stepp was standing just below said window on the sidewalk, that said Stepp was in full uniform, that there was plenty of light where he was standing, and that Kelly discharged his pistol in the direction of Stepp, the bullet striking the sidewalk about three feet from where Stepp was standing.

"The testimony of C. M. Foraker discloses the fact that in addition to police officer Stepp, police officer Yeager was also on the sidewalk and visible from the window, and that said Yeager was in full police uniform.

"The testimony further shows that the witness C. M. Foraker, subsequent to the firing of the shot of the defendant, Kelly, that struck the sidewalk near police officer Stepp, that the defendant, Kelly, put his head out of the window, and that officer Foraker shot at him, the bullet going through the defendant, Kelly's, hat.

"On cross-examination the witness Foraker testified that he was in full uniform.

"From the foregoing testimony it is seen that the defendant, Kelly, at the time he opened the door to his said room had full opportunity to see that the men were officers, that they did not have time after the opening of the door to notify Kelly that they were officers; but, on the other hand, Kelly immediately began to shoot upon the opening of said door. That Kelly at the time he was at the window before firing the shot at Stepp had full and ample opportunity to see both officers Stepp and Yeager on the street below."

In another, he wanted the court to charge that if the jury believed said officers, or either, forced an entrance into the room of defendant without making themselves known to him as officers and without stating their purpose, then said officers stood in the same relation to him as any other citizen, and he had the right to defend himself; and if the acts or words, or both, of said officers created in his mind a reasonable apprehension that he was in danger of losing his life or suffering serious bodily harm at the hands of said officers, or either of them, then he had a right to defend himself from such real or apparent danger, and he was not bound to retreat in order to avoid the necessity of killing them; and if they believed he committed the assault upon said Smith and Eimicke as a means of defense under the circumstances, or if they had a reasonable doubt of it, then that he acted within his legal rights and his conduct could not be considered as a circumstance against him.

In another, he wanted the court to charge the jury that if they believed that he was at his place of residence and neither of the arresting officers made known to him their authority as officers or their purpose, then the officers had no authority or right to force an entrance into his room, and that if they did, their acts were illegal, and he had a right to prevent such intrusion, even to the extent of killing them to prevent their intrusion; or if they had a reasonable doubt of it, and he used no more force than was necessary, he was guilty of no offense, and his conduct at the time must not be considered as a circumstance against him.

The first of these bills just stated the court qualified by stating that there was no evidence in the record raising this issue, and, therefore, no such charge was necessary. The other he qualified as follows: "The testimony does not disclose that the officers attempted to force an entrance into the room of the defendant until after the defendant voluntarily opened the door to said room and had looked out and had seen said officers and had begun to shoot at them; that entrance to said room was not made by said officers until after defendant had begun to shoot, at which time said Frank Smith did force an entrance into said room, was shot by the defendant, and that officer Eimicke in attempting to enter said room was shot by the defendant. There being no testimony in the record that said officers attempted to force an entrance to said room before the defendant began to shoot, the issue con-

tained in the special charge complained of in this bill of exceptions was not raised by the testimony and a charge thereon was not required."

In another, he wanted the court to charge that even though he was guilty of a felony, yet if he was not at the time about to escape and there was time for the officers to procure a warrant for his arrest, then his arrest without a warrant was illegal, and he had a right to resist, even to the extent of killing the said officers, or any of them, if it was necessary to prevent such arrest, and if they believed this, then not to consider his acts and conduct as a circumstance against him.

In another, he requested a charge along the same line; and in still another, he requested another charge along the same line.

The court in qualifying each of these bills said: "The testimony disclosed by the statement of facts in this case shows that one Dave Weidner, who was with Kelly at the time of the robbery of the said J. M. Caywood, was arrested by officer Plant at about 12:30 o'clock on the night of the robbery. That said Weidner was thereafter taken to the oil station in Oak Cliff, where he was identified by said Caywood and others as being one of the men who had robbed said Caywood. That said Weidner was from said oil station taken back to the city hall of the City of Dallas; that the said Weidner there informed the officers as to who it was who assisted him in the robbery of said Caywood about twenty minutes before said officers went to the Williams Hotel—which was somewhere in the neighborhood of 3 o'clock in the morning. That said Weidner had told said officers that he and Frank Kelly had the room at said Williams Hotel, said room being No. 7.

"The testimony of the witness Frank Smith shows that at the time of the arrest of the defendant, Kelly, the defendant, Kelly, was fully dressed.

"From the foregoing testimony it seems that the officers received the information disclosing the identity of Kelly as being one of the men who robbed said Caywood at a very early hour in the morning; that said Kelly was fully dressed at the time arrested; that he occupied a room in a hotel, and that said officers had been informed by J. M. Caywood, a reputable person of the commission of said offense; that one of the principals in the robbery, Dave Weidner, had advised the officers as to the identity of the other man; and that because of the lateness of the hour and all the facts and circumstances surrounding the transaction, the officers did not have an opportunity to make a complaint against said Kelly and obtain a warrant for his arrest. The issue complained of in said bill of exceptions and as covered by the special charge requested is not raised by the testimony in this case, and no charge was required thereon."

In his only other bill he wanted the court to charge that, although the jury might find and believe from the evidence that the said officers had information from a credible person that he had committed the offense charged, and even though they believed they had a lawful right to arrest him, yet if they believed such authority was exercised in

such a wanton and menacing manner as to threaten him with the loss of life or serious bodily harm, then he had the right to defend himself as it appeared to him, and he would not be bound to retreat to avoid the necessity of killing them, even though they had the legal authority to arrest him; and if he exercised only such force as was necessary to defend himself, or if they had a reasonable doubt thereof, then not to consider his acts and conduct as a circumstance against him. The court, in approving that bill, did so with this qualification:

"There is no testimony in the record raising the issue embodied on the requested charge of the defendant, the refusal of which is complained of in this bill. The record as shown by the statement of facts discloses that the defendant, Kelly, immediately upon opening the door to his said room began to shoot, and continued to shoot until the witness Smith had retired from said room to the hall; that Kelly thereupon slammed the door to his said room, went to a window of said room and discharged his pistol out of said window in the direction of police officer Stepp, who, together with police officer Yeager, were in full uniform standing beneath said window, that the bullet struck the sidewalk within three feet of the said Stepp; that officer Foraker subsequent to the firing of this shot by said Kelly, fired a shot at Kelly from the window of the room adjoining the room which Kelly occupied; that at the time of firing said shot Kelly's head was protruding from the window of said room, the bullet from Foraker's gun going through Kelly's hat; that immediately upon Kelly's hat being pierced by said bullet said Kelly called out and said to the officers, 'I give up,' and permitted said officers to take him into custody."

Some of these charges announced correct legal propositions in a proper case where the evidence would make them applicable. But they were inapplicable in this case.

As qualified by the court, neither of his bills presents any reversible error. We think it unnecessary to discuss any of these matters. Cortez v. State, 43 Texas Crim. Rep., 375; Smith v. State, 48 Texas Crim. Rep., 233; Miller v. State, 32 Texas Crim. Rep., 319; Miller v. State, 31 Texas Crim. Rep., 609; Stewart v. State, 76 Texas Crim. Rep., 442, 174 S. W. Rep., 1077. As stated, appellant himself did not testify at all. He had no defense whatever. He pleaded guilty. Under the circumstances of this case there can be no doubt that appellant committed the crime alleged against him. He attempted to secrete himself under an assumed name in another part of the City of Dallas from where he had committed the crime. There can be no doubt but that he anticipated and momentarily expected the officers would attempt to arrest him for the crime, whether with or without a warrant. That he deliberately prepared himself to flee from the room where he was whenever he discovered that they were after him and prepared himself to shoot and kill them when they did attempt to arrest him, and did actually shoot two of them and shot at another as long as he had ammunition and could shoot. The officers unquestionably had the

right to arrest him without a warrant, and attempted to do so in a proper manner under the circumstances of this case. Their action merits commendation and not condemnation.

The judgment is affirmed.

*Affirmed.*

DAVIDSON, Judge.—I can not agree this case should be affirmed under the record as shown by the transcript.

DAVIDSON, Judge (dissenting).—I desire to say I can not agree with my brethren that all the facts in detail in regard to the assault case in cause No. 4162 were admissible in this case. That case has no connection with the robbery case, so far as defendant is concerned. The robbery case had ended; he pleaded guilty to the robbery. When the robbery occurred he and his companion went away over to Dallas, three or four miles distant, appellant going to bed. That transaction was completed. The robbery was a finality. If it was thought necessary or legal to introduce the fact that he assaulted the officers, certainly the details of it ought not to have been admitted. We have an old familiar rule where an extraneous crime or offense, or one thought to be a crime or offense, is used by the State, that the details and history of the case can not be developed in the case on trial. Two cases were being tried at the same time against appellant, the robbery case at Oak Cliff, and the assault case in Dallas. It was not necessary to make the robbery case understood in any manner to introduce the details of the transaction in Dallas, where the officers went to appellant's room and had the shooting scrape with him. What effect it may have had on the minds of the jury can not be told except in the light of the verdict in the robbery case, which is ninety-nine years. With the details of the assault case out of this record the verdict may have been much less, but we do know that he was awarded ninety-nine years, and this testimony may have produced the heavy verdict. In the judgment of the writer it was clearly inadmissible. Appellant pleaded guilty to the robbery. The details of the robbery itself were admissible, of course, because the statute provides that in cases of pleas of guilty, among other things, evidence shall be introduced before the jury. Evidently the State thought defendant might escape with a smaller punishment for the robbery or might not get as heavy punishment as desired. A sufficient amount of the details of the robbery should have gone to the jury so that they might arrive at a fair conclusion as to the amount of punishment to be meted out on account of the robbery. A case should not be burdened with the details of an assault and shooting scrape case occurring at different times and places. I do not believe appellant has had that fair trial accorded him by the law, therefore I can not agree to this affirmance. I do not care to pursue the matter further. I respectfully enter my dissent.